IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**STEVEN T. HIGGINS,**                                          2:12-CV-01000 RE

             Plaintiff,                                **OPINION AND ORDER**

      v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

          Defendant.

**REDDEN**, Judge:

Plaintiff Steven Higgins ("Higgins") brings this action to obtain judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

his claim for Supplemental Security Income ("SSI") disability benefits and Disability Insurance

Benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this

matter is remanded for the calculation and payment of benefits pursuant to Sentence Four, 42 U.S.C. § 405(g).

## **BACKGROUND**

Born in 1948, Higgins is a high school graduate.  Tr. 57, 805, 819.  He has worked at a lumbar mill.  Tr. 57-58.    In March 1997, Higgins filed an application for disability insurance benefits and Supplemental Security Income, alleging disability since December 31, 2001, due to two cervical surgeries and a hernia.   Tr. 146.  His application was denied initially and upon reconsideration.  After January 1999 and August 1999 hearings, an Administrative Law Judge ("ALJ") found him not disabled.  Tr. 336-42.

The Appeals Council remanded this decision to the ALJ in September 2000.  Tr. 354-56.  A third hearing was held in April 2001, and a fourth hearing in September 2005.  Tr. 73-112, 776-800.  The ALJ found Higgins not disabled on December 8, 2005.  Tr. 416-27.  Higgins appealed that decision to the Appeals Council, and this court remanded the matter for further proceedings on June 14, 2008.  Tr. 432-34.

Another hearing was held on June 17, 2009.  Tr. 137-75.  On November 2, 2009, the ALJ found Higgins disabled as of his fifty-fifth birthday, January 27, 2003, but not disabled prior to that date.  Tr. 398-408.  This court again remanded on May 31, 2011.  Tr. 830-56.   A final hearing was held on November 22, 2011.  Tr.  956-73.  Higgins appealed the ALJ's determination concerning the period between his December 31, 2001, alleged onset date and the January 27, 2003 date his disability began.  The Appeals Council upheld the decision of the ALJ, and Higgins now appeals to this court.

/ / /

## **ALJ's DECISION**

The ALJ found Higgins had the medically determinable severe impairments of degenerative arthritis of the cervical spine status post C6-7 discectomy and fusion in November 1994 and C6-7 foraminotomy in February 1995, degenerative arthritis of the lumbosacral spine, and degenerative arthritis and bursitis of the hips bilaterally. Tr. 401.

The ALJ found that Higgins's impairments did not meet or equal the requirements of a listed impairment. *Id.*

The ALJ determined that Higgins retained the residual functional capacity ("RFC") to perform a limited range of light work. Tr. 401.

The ALJ found that Higgins was not disabled prior to January 27, 2003, the date his age category changed, and retained the ability to perform other work as a small products assembler, a cafeteria attendant, and a security guard. Tr. 406.

The medical records accurately set out Higgins's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3  - OPINION AND ORDER

## DISCUSSION

Higgins contends the ALJ erred by: (1) finding him not credible; (2) improperly weighing medical evidence; and (3) posing an inaccurate hypothetical question to the vocational expert.

### I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (l) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Id.* at 1282.

Higgins testified that he cannot work because of neck, arm, shoulder, and hip pain, and numbness in his fingers. Tr. 809-11.

The ALJ found Higgins's medically determinable impairments could reasonably be expected to cause some symptoms, but Higgins was not fully credible for the following reasons:

The ALJ stated:

> Mr. Higgins reported engaging in activities, such as fishing, that seem inconsistent with the degree of left upper extremity restrictions he alleged. Similarly, despite demonstrating minimal ability to push/pull with his left upper extremity during medical examinations, Mr. Higgins indicated that he had no difficulty vacuuming. His reporting to the Administration was inconsistent with his reporting to medical providers at times. For example, he informed the Administration that he could not chop firewood any longer, but he told Dr. Blaisdell that he continued to cut/split firewood, go target shooting, hike, and fish. Mr. Higgins' choice to pick up his neighbor's children occasionally, while not necessarily inconsistent with a finding of disability, certainly could undermine his assertion that driving is difficulty [sic] and causes significant pain given that he did not have to perform this activity.

Tr. 812.

5 - OPINION AND ORDER

In an undated Function Report Higgins stated that he was no longer able to "cut fire wood." Tr. 174. This Report was completed sometime before the first ALJ hearing in this matter which occurred on August 6, 1999.

J.S. Blaisdell, M.D., completed an orthopaedic examination of Higgins on October 21, 1995. Tr. 248-55. Dr. Blaisdell noted that Higgins had "discontinued using a three-wheeler or a snowmobile....With difficulty, he can still cut and split fireplace wood. Lengthy rides in a motor vehicle, hiking, and fishing are attended by discomfort, but are still performed." Tr. 250. There is no inconsistency between these reports because the Function Report is undated. Even if the Function Report was completed prior to Blaisdell's examination, this minor inconsistency does not constitute a clear and convincing reason to find Higgins less than fully credible.

The ALJ stated that Higgins had "no difficulty vacuuming" despite exhibiting a minimal ability to push/pull with his left upper extremity in medical examinations. Tr. 812. However, in the undated Function Report Higgins stated there had been "no change" in his ability to "vacuum/sweep," and do dishes. Tr. 174.

In September 1997 Higgins reported to Michael Kendrick, M.D., that he enjoyed fishing and hunting. Tr. 320. Dr. Kendrick found decreased motion of the neck with pain. "He has an absent left triceps jerk with weakness in the digital extensors and some biceps weakness as well." *Id.* In April 2001 Higgins testified that he kept the house clean, did laundry, ironing, and did some target shooting. Tr. 84.

The ALJ did not cite clear and convincing reasons to reject Higgins's subjective complaints, and that determination is not supported by substantial evidence.

## II. The Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

## A. J.S. Blaisdell, M.D.

Dr. Blaisdell, an orthopaedic surgeon, examined Higgins on October 21, 1995. Higgins reported a sharp pain in the cervical spine about 75% of the time, and constant headaches. Tr. 249. Dr. Blaisdell noted "power and endurance are diminished in the left upper limb." *Id.* Higgins had a positive Tinels's sign in the left elbow and wrist. Dr. Blaisdell diagnosed a musculoligamentous strain/sprain of the cervical spine, superimposed on pre-existing degenerative joint disease. Tr. 251. Higgins was working part time, and Dr. Blaisdell stated it "was by no means certain whether he can 1) continue at this level of work; (2) possibly increase his level of work; and 3) be forced to discontinue working because of recurrence [sic] disabling symptoms." Tr. 252. Dr. Blaisdell opined Higgins had "poor" use of his left hand for "simple grasping," and no ability to use the left hand for repetitive fine manipulation. Tr. 253.

The ALJ noted Dr. Blaisdell's opinion and gave it "some weight." Tr. 812. The ALJ rejected that portion of Dr. Blaisdell's opinion pertaining to Higgins' limited use of the left hand

because the ALJ asserted the examination findings were normal and Dr. Blaisdell based the restrictions on Higgins' subjective reporting.

As noted above, Dr. Blaisdell documented abnormal examination findings, including diminished strength, endurance, and dexterity of the left arm, left shoulder and arm weakness compared to the right, and positive Tinel's signs in the left elbow and wrist. The ALJ did not identify clear and convincing or specific and legitimate reasons to reject Dr. Blaisdell's assessed restrictions.

**B. Michael M. Kendrick, M.D.**

Dr. Kendrick is a neurosurgeon who treated Higgins between September 30, 1997, and April 27, 1998. Tr. 317-25. On September 30, 1997, Dr. Kendrick ordered xrays of Higgins cervical spine, and opined Higgins had "a lot of degenerative changes at [C]5-6. He also has degenerative changes in the lower lumbar area with the worst of the facet disease being left side at L5-S1 with a markedly sclerotic facet." Tr. 318, 321.

Dr. Kendrick and his physician's assistant completed a Social Security Administration form on April 27, 1998. Tr. 323-25. The form bears Dr. Kendrick's name, and the signature of his physician's assistant, "Smith, P.A. for M. Kendrick, M.D." Tr. 326.

Dr. Kendrick and Smith found Higgins could occasionally lift or carry between ten and thirty pounds, and frequently lift a maximum of ten to twenty pounds. Tr. 323. They found that he could walk one to two hours, followed by a twenty five to ninety minute break. They based these limitations on Higgins' low back pain and facet disease at L5-S1, and neck pain at C5, C6, and C7. *Id.* Dr. Kendrick and Smith found Higgins could sit a total of two to three hours in an eight-hour workday, and he could never climb, kneel, crouch, stoop, balance, or crawl. They

found he could sit for a total of three hours in a work day.   Finally, they indicated Higgins is limited in reaching, handling, pushing and pulling, but has no limitations in feeling, seeing, hearing, or speaking.  *Id.*   Dr. Kendrick and Smith stated their restrictions were based upon Higgins' spinal degenerative changes evidenced by decreased range of motion, delayed triceps muscle reflexes, and digital and biceps muscle weakness.

The ALJ noted Dr. Kendrick's opinion was inconsistent with competitive employment. Tr. 813.  The ALJ gave Dr. Kendrick's opinion "little weight:"

> A review of the medical records in toto does not show that the findings relied upon by Dr. Kendrick persisted into the adjudicatory period.  Specifically, the reflex changes and muscle weakness relied upon were absent in later examinations by treating sources.  Dr. Kendrick's opinion also appears to be somewhat internally contradictory since he limited Mr. Higgins to no more than three hours sitting at one time and then found he could engage in no more than three hours of sitting per workday; there is nothing in the record to support that Mr. Higgins would be incapable of returning to a seated position after a normal break.  No other medical source in the record, treating or otherwise, found such limited ability to sit.

Tr. 813.

There is medical evidence of muscle weakness after Dr. Kendrick's April 1998 opinion. In October 1999 Bruce Williams, M.D., found an obvious deformity of the left AC joint, noted increased pain with flexion or extension, and that external rotation was "markedly limited" and internal rotation was moderately limited.  Tr. 330.  In June 2000 Bradford Dorsay, M.D., found Higgins "significantly weaker on the left side in the upper extremities...."  Tr. 678.  In July 2000 Wayne Kelley, P.A.C., found "a half inch of atrophy in the left forearm to measurement

compared to the right. There is also moderate atrophy of the thenar eminence of the left hand compared to the right." Tr. 380. Grip on the left was two out of five.

As to Dr. Kendrick's opinion regarding Higgins' ability to sit, the ALJ stated that no other medical provider found the claimant so limited. However, in the Physical Capacity Examination conducted by Physical Therapist Karen Elton in February 2001, she found Higgins could stand/walk two to four hours per day and sit four to six hours per day. Tr. 389-90.

The ALJ failed to articulate clear and convincing, or specific and legitimate reasons to reject Dr. Kendrick's opinions.

## C.  Bret A. Dirks, M.D.

Orthopedic surgeon Dirks treated Higgins between October 14, 1994 and July 15, 1998. Tr. 273, 285-303, 329. Dr. Dirks performed a cervical discectomy and fusion at C6-7 on November 7, 1994, and a subsequent foraminotomy at C6-7 on February 15, 1995. Tr. 201-03. On July 15, 1998, Dr. Dirks wrote that Higgins should "avoid repetitive movements of head, and arms, so that he does not cause persistent pain into his arms and neck." Tr. 329. Dr. Dirks stated Higgins should be allowed to "change [position] and rotate on his job every hour or so...." *Id.*

The ALJ gave "minimal weight" to Dr. Dirks' opinion. Tr. 813. The ALJ noted Dr. Dirks' treatment of Higgins ended three years prior to the alleged onset date of December 31, 2001. However, this is not a valid reason to reject Dr. Dirks because the ALJ must consider a claimant's complete medical record. 20 C.F.R. §§ 404.1512(a), (b), (d)(2); 416.912(a), (b), (d)(2).

The ALJ rejected Dr. Dirks' opinion as "clearly transient" following surgery. However, Dr. Dirks' opinion regarding repetitive movements of the head and arms was expressed in July

1998, more than three years after the claimant's last surgery, and cannot be considered transient as post-surgical.

The ALJ found that Dr. Dirks' opinion not supported by his own records, citing a September 1996 chart note in which Higgins complains of increased left arm pain radiating down the arm into the hand. Tr. 279. Dr. Dirks found muscle strength 5/5, and "slightly weaker" left grip. Examination revealed "maybe slightly decreased sensation in a C6-7 distribution." *Id.* Cervical spine MRI "actually looks pretty good without evidence of compression onto the nerve root at this level." Tr. 273.

Dr. Dirks' opinion that Higgins should avoid repetitive movement of his head and arms is uncontradicted. The ALJ failed to identify clear and convincing, or specific and legitimate, reasons to reject Dr. Dirks' opinion.

### D. Bruce N. Williams, M.D.

Dr. Williams treated Higgins twice in 1999. Tr. 330, 376. Dr. Williams noted that an independent medical examination with formal testing was appropriate, and that he was describing the limitations as alleged by Higgins. Dr. Williams stated that Higgins reported he could sit a half hour at one time, and stand or walk about fifteen minutes, and may sit three to four hours and stand one to two hours through an eight-hour shift. Tr. 376. Dr. Williams wrote that Higgins is left handed, but can use his right hand as long as he does not lift it above shoulder level. *Id.* On the accompanying form, Dr. Williams noted these limitations, and indicated that Higgins could not perform fine manipulation with his dominant left hand. Tr. 378.

The ALJ noted Dr. Williams' opinion, and Dr. Williams' statement that he was relying on Higgins' subjective assertions and would likely overestimate Higgins' functional limitations. The ALJ identified clear and convincing reasons to give Dr. Williams' opinion less weight.

**E. Physical Therapist Karen Elton**

Karen Elton assessed Higgins on February 27, 2001, and completed a functional capacity analysis. Tr. 386-87. Elton found Higgins could perform light work for eight hours per day, with lifting and postural restrictions. Tr. 386. Elton found Higgins could stand or walk two to four hours in a day, and sit four to six hours a day. Tr. 390-91. Elton stated Higgins "participated fully in 21 out of 21 tasks and demonstrated overexertion participation on 2 out of 21 tasks (ladder and dynamic pulling)." *Id.* She noted that Higgins required additional rest breaks to complete the three hour evaluation. Tr. 387B. Ms. Elton concluded that Higgins was not able to work with arms overhead, bent over, kneeling, or squatting. Tr. 386. She opined he had limited ability to push and pull with the left arm, and limited ability to reach and finger with his left hand. Tr. 390-91.

The ALJ gave "some weight" to this assessment, but rejected aspects of the report pertaining to Higgins' left hand because "this opinion would have been more persuasive if PT Elton had performed some measure of validity testing to ensure full participation." Tr. 814. As Higgins points out, the agency sent him to this evaluation, and if it wanted validity testing it should have ordered it. The ALJ did not identify clear and convincing, or specific and legitimate, reasons to reject PT Elton's assessment.

The ALJ's interpretation of the medical evidence was not reasonable and not supported by substantial evidence.

### III. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's rejection of the opinions of the two treating physicians and two examining providers is erroneous for the reasons set out above. Dr. Kendricks opined, in April 1998, that

Higgins would be limited to standing/walking no more than 30 minutes at a time, and for a total of one to two hours a day, and limited sitting two to three hours per day. Tr. 323-24. PT Elton opined, in February 2001, that Higgins could stand/walk two to four hours a day and sit four to six hours a day. Tr. 390-91. The lower end of these ranges, which would apply on "bad" days, indicate Higgins would be unable to complete an eight hour work day.

Accordingly, this matter is remanded for the calculation and award of benefits.

## CONCLUSION

For these reasons, the decision of the Commissioner is reversed and this matter is remanded pursuant to 42 U.S.C. § 405(g) for the calculation and payment of benefits.

IT IS SO ORDERED.

Dated this _li_ day of December, 2013.


JAMES A. REDDEN
United States District Judge